and U.S. Philips v. Netgear, 2010-1045, and we have three companies and three patents and two appellants, and Mr. Miller is going to argue for LG and Philips, and you're going to take 14 minutes, split up, and then we'll hear from Ms. Maynard with her division, and then we'll hear the appellee, Mr. Liebman. Mr. Miller. May it please the Court, as you noted, Your Honor, I represent the appellants U.S. Philips and LG Electronics. There are two patents at issue with respect to those two parties. One is Philips' 952 patent, which relates to fragmenting or segmenting of messages, and LG's 993 patent covering prioritizing data transmissions. With respect to Philips' 952 patent, we submit that the district court's findings of non-infringement should be reversed. Each of the accused products that performs fragmentation includes a component, firmware, that is used solely to fragment messages. The firmware functions to divide the messages into portions and to add the identifying information that's required by Claim 1 of the 952 patent. Netgear's extensive sales— Don't you have a notice problem, though? We don't believe that we do have a notice problem, Your Honor. But the court held you did, right? The court held that there was a notice problem by applying the damages statute, Section 287, which first does not apply to method claims, as Claim 1 is a method claim. And second, there was, in fact, notice through a letter from—via licensing to— That was held to be too vague. Mentioned a lot of patents without focusing on specific accused items. That was the district court's finding, Your Honor. We believe that, again, that that is an inappropriate finding. And the letter didn't specifically allege infringement, did it? The letter provided the knowledge of the patent which is sufficient under a finding—to establish a finding of contributory or inducing infringement if the other requirements of inducement or— Wait, knowledge of—you're saying knowledge of the patent alone is sufficient for contributory induced infringement? I thought our precedent said you had knowledge that the acts would constitute infringement as well. Your Honor, you're correct. There are additional requirements to contributory and infringement and inducing infringement that are imposed by the statute. But for purposes of notice, the only thing that's required is knowledge of the patent. For purposes of notice, you're talking about when she incorporated this 287 analysis into the infringement doctrine? Is that what you're referring to? I just want you to go to the heart of what's required for contributory and induced infringement. For contributory infringement, the patent—the only thing that is required with respect to advising the alleged infringer by the patentee is to identify for them the patent. In this case, the patent was identified—there were a group of patents—and the accused product—all products that conformed to the 802.11 standard. There are— The 802.11 standard fragmentation is entirely optional. So how could an allegation like that ever amount to knowledge of exactly what's being accused of infringement? Because there are lots of products that fall within that standard that don't use fragmentation. It's true that— So simply writing a letter to you saying, all your products that fall within this standard violate my patent, that wouldn't give me notice of anything if the section—if your because that's optional. I'm compliant with the standard. I admit that, but I don't fragment. Your Honor, I respectfully disagree. The standard requires that if you fragment, you fragment in a specific manner as required by section 9.4 of the standard. It's not— Yes, but you're saying your generalized letter, which just pointed to the standard and pointed to products, necessarily gave the relevant notice. How is that possible when the standard itself does not require fragmentation? The relevant—the requirement for the patentee is to identify the patent and let the accused infringer know that the patent exists.  Is it just to let them know that the patent exists or to put them on notice that they're potentially infringing this patent with particular products? It is simply for this purpose. It is only to provide them with notice, knowledge of the patent. Knowledge is sufficient. The further requirements of contributory infringement and knowledge of how the product operates is a separate requirement, and our position is that the only thing that's required to open the door, in this case, for contributory infringement is to provide them with knowledge of the patent. And then the remaining requirements need to be established to improving infringement, knowing that it was especially adopted and that there are no substantial non-infringing uses. Well, I guess I'm still—maybe it's just me today, but I'm still not understanding how exactly you treat knowledge that the acts would constitute infringement as part of this doctrine, because you agreed with me at the outset that that is a requirement of contributory infringement, but are you saying it's not required that the patentee point that out, that it's sufficient if they figure it out on their own? That's correct. And if so, where's your evidence that they did? To preclude summary judgment. In this case, we put into the record evidence that Netgear instructed the ODMs, the companies that manufacture Netgear's products, to develop products that comply with the standard. And as part of that, they created a graphical user interface that allows fragmentation to be enabled. They put instructions in their instruction manuals on how to fragment, how to turn on fragmentation. And there is also evidence that in their customer service calls, Netgear instructs users to turn on fragmentation. Netgear knew that fragmentation was part of their products. Wasn't that just for a rather small number of products? The customer service records cover a relatively large number of products. The district court—we cited four of those to the district court. There is a chart in our brief, which I believe it's at page 32, that lists all of the products for which there are customer service records. The chart spans pages 31 and 32 of our brief. You want to touch on the LG993? Yes, sir. We believe that there are two claim construction errors with respect to the 993 patent, both of which require the district court's findings to be vacated. There are two findings at issue. The first is the finding that claim 25 of the 993 patent does not read on the 802.11 standard or— Is that a question of claim construction? We believe that it is a question of law, but it's not a question of claim construction. It's as the claim was applied. So, the two claim construction errors are, first, the addition of requirement of the type of information that's used to set the priority level. The claim does not specify the type of information. The specification does not identify the type of information that can be used. It talks about a priority level of terminals. Not of messages. The claim does say setting the priority level of a terminal, but it doesn't say setting the terminal priority level, and doesn't limit what information could be used to set the priority level of the terminal. The problem you have with the Netgear products, as I understand them, is randomly bits one through five are used for voice, and one through ten are used for video, and it's random. So the problem you have is you don't have the priority argument or the ability to make it as a matter of fact, because suppose that one through five gets assigned priority level five, and one through ten gets assigned priority level one, well you actually have video going before voice, which would totally mess up the priority that you want us to find to exist. Well, the claim doesn't say which order they have to be transmitted, and it only says you have to establish a priority. And what we're arguing is that because- Well, then there would be no priority would always be a priority in your mind. Random would be a priority. Well, Your Honor, that's not exactly the way it works. The way it works is that the terminal is assigned a priority based on the priority of the highest queued message, the highest priority queued message. So if you have two messages, one is a voice message, it has a high priority, the priority of that message is then adopted as the priority of the terminal. If there happens to be a lower priority message, which is transmitted before the voice message, for example, because it had been waiting for a long time in a terminal, the terminal still uses the priority that it's adopted from the highest priority queued message. That is also useful in interpreting the claim, saying that these message priorities become the message, the priority of the terminal. So even if you use the priority of the highest priority, the priority of the message which has the highest priority sitting in the queue, that becomes the terminal priority. I guess just to make sure I understand it, are you saying that Netgear's method of prioritization is voice, video, and then the other two things? I'll just lump them both together because I can't remember what they are. But voice, video, and then the other two which come after, is that their method of prioritization? That's their method of setting, those are the types of messages, and each of those message types has a prioritization which is then used to set the priority of the terminal. After that happens, there are other things that affect which message is set first, but those are what's used to set the priority of the terminal. Now there's a second claim construction issue that I'd like to address which relates to the district court's finding that once a priority level is set, it's set permanently. That is not in the claim language. The claim language says set the priority level, it does not say permanently set, it does not say that that cannot be changed once it's set, and in fact because this is a method claim you could add a second step which would be setting the priority level of the terminal again, and that's not, none of those are precluded by the claim language and there's no support for that interpretation. Does the Netgear do blocking, the Netgear process? You mean blocking messages that are not... Lower priority. Lower priority, yes it does. How? Because if they sit in a terminal that has a lower priority, so you have two terminals that are trying to transmit. One has a higher priority, the other has a lower. The terminal with a higher priority is entitled to transmit first before the terminal with a lower priority is entitled to transmit. So the lower priority terminal is blocked during the time that the terminal with a higher priority is permitted to transmit. You are exactly at the point where you wanted to save the rest of your time. Which I will be, thank you, Your Honor. Ms. Maynard, arguing for Fujitsu, the 642 patent. Thank you, Your Honor. May it please the court, my name is Deanne Maynard and I represent Appellate Fujitsu Limited. And you are arguing synchronously with your colleague. Just don't try to extend any of your time. Thank you, Your Honor. I would agree with you that we are arguing synchronously with one another. And regardless of how the court rules on the other two patents, the court should reverse the judgment with respect to Fujitsu's separate patent, the 642 patent. Under correct construction of the term synchronously and data received ready period, there is at least a genuine issue of material fact for trial. I'd like to discuss the court's errors as to both terms, synchronously and data received ready period. As to synchronously, there are three independent reasons to reverse. First, the court erred in construing the term to require that the mobile station power on at the same time that the beacon signal is received. That construction cannot be squared with either the specification or the figures in the patent. What about almost at the same time? I think that once one rejects the construction of at the same time, Your Honor, the proper construction of synchronously is in phase with or in sync with just a temporal relationship, not one of any specific durational length in between times. And the patent at various places says, for example, in column one, it describes the relationship as the mobile station wakes up so as to receive the beacon signal. And in column 22, in talking about several of the preferred embodiments, albeit not with respect to the claims at issue here, but nevertheless claims that have the synchronously limitation in them, it talks about the beacon signal being received after being powered on, after the mobile station is powered on. And this is shown by some of the illustrations, particularly in figure 18, which is set forth on page 29 of our brief. It illustrates that there are two separate steps. There's D1, wake up, and then it goes down to D2, has the beacon been received, and even allows the possibility that no, it hasn't been received yet, and cycles back up, no, and it waits for it to be received. Shouldn't this definition of synchronization be read with an eye towards the power-saving purpose of this technology? And your idea that there is no, in fact, temporal relation, it just has to happen at some point before, doesn't seem to me to be consistent with the overall purpose of the patent. Well, as long as one has this sleep-wake cycle, Your Honor, there will be some power savings. So as long as you don't have a constant power on, there will be power savings. To be sure, if one wants to have higher power savings, one would implement the patent in such a way as to make the times close together. But nothing in the patent limits the time between when the mobile station wakes up and when the subsequent beacon signal comes in. But even... Actually, you don't have much time. Can I get you to move on to the data-ready-received period, if you don't mind? Definitely. Can I make one last point with respect to your question? Even if you were to believe that there were some time limitation, which we don't believe that there is, even under such a construction, there was a duty of fact for trial, because we put in evidence that would show that it was powering up very close in time. And the district court said it's impossible to tell exactly how close, but with respect, that's a question for the jury. And so either under the doctrine of equivalence or even under some kind of instruction that would allow some duration of time, there was a dispute of fact for the jury. But I would like to address the data-received-ready-period error as well. And there, I think, again, there are two independent reasons to reverse. First, the court added a limitation at the summary judgment stage that is inconsistent with the patent. Specifically, it added a requirement, quote, that the access points limit transmission of data during a fixed period unless they transmit time extension information. And that's erroneous, because the data-received-ready-period relates to what the mobile station does, not the access point, not the base station that sends the signals. But this claim that you chose to assert claim two has a time extension requirement. It's one of the limitations of the claim. But it isn't part of the data-received-ready-period limitation. Well, her definition of data-received-ready-period, the DRR period, is number one, number two. And number one, number two don't include the time extension. I kind of read her opinion as an, and also, we take, because clearly they're intertwined, you take into account the time extension information. Well, we don't take issue with her number one and her number two at the mark when we think that's correct. But the number three was the reason she granted summary judgment in favor of Netgear. So she did add it as part of- I didn't interpret her opinion that way. I interpreted her opinion as saying there has to be a fixed time period, a constant period as the patent refers to it, and that the Netgear period wasn't constant. It went on as long as the data continued to be transmitted. And that's why she found non-infringement. She mentioned the time extension period as well, but I think that you're being a little bit unfair to her opinion. I think if you look at A50 of her opinion, the sole ground on which she granted summary judgment to Netgear was she said, because, quote, the evidence plaintiffs provided demonstrated that the access points transmit data to mobile stations so long as there is data to transmit. But it did not establish whether the access points, the base stations, limit transmission of data during the fixed period unless they transmit time extension information. That interpretation, she required Fujitsu to show to avoid summary judgment that the access points of base stations would limit transmission unless- Hold on. Hold on. You stopped too quick. In other words, plaintiff's experts' tests show an access point that transmit all the And she goes on without mentioning the time extension. So clearly what she's fixated on is the fixed period of time. She mentions the time extension, which you agree is an additional limitation of the claim anyway. So maybe she found non-infringement on two independent grounds, but she clearly found it on the lack of a fixed period as well. I think that a fair reading of her opinion is that the unless- Well, two points in response to that. One, nothing in Claim 2, 6, or 8 requires the unless time extension information. It's such a negative that it's not required by the claim. Claims 2, 6- You have time extension information. It's a limitation of the claim. Now your Claim 1, your Claim 3, they don't have time extension information. So that's what I found your arguments about reading out a preferred embodiment to fall on deaf ears for me because you've got other claims that clearly do cover those embodiments. But this one, you added the limitation of time extension. This is the, in fact, claim in which you added that limitation, the independent claim. All your other independent claims, well, I don't know all of them, but most of the others don't have that limitation. So you put it here. It has to be given purpose and effect. The way that it would work is that the base station would send time extension information in Claims 2, 6, 8. With that, I don't disagree. It's the unless part that is incorrect. There's nothing in there that says the base station will cease sending information at the end of the data ready receive period. And the court did interpret, did read this limitation into her definition of fixed data ready receive period. And the reason that is incorrect, as your Honor points out our argument is, is that would exclude limitations in Claims 3 and 7, which you don't require, which solve this problem in a different way. The base stations have a different way of sending information beyond the data ready receive period. But all Claims 2, 6, and 8, data ready receive period is just a constant period. In fact, the patent itself defines data ready receive period, yet the court is faulting us for failing to meet that limitation. It's defined on pages A323 to 324 and column 26 of the patent as being defined as a fixed So the claim says, if said data is to be transmitted continuously beyond said data ready receive period, there has to be a time extension signal. So you're right. There's not a flaw for continuing to send data, but only if you do it with a time extension signal. Well, that again relates to data transmitted. It doesn't say data received. It says data transmitted. Right. And again, that would relate to what the base station does. But what the data ready receive period does, which is what the court was purporting to in her opinion, is what the mobile station does. And nothing in the patent limits the data ready receive period to a period of time unless time extension information is sent from the base station. Ms. Maynard, we've consumed your time with colloquy, which is useful. We'll give you two minutes back. Thank you, Your Honor. I appreciate it. Mr. Liebman. Mr. Court, my name is Ken Liebman. I represent the appellee, Ned Geer. What I'd like to do is first address one issue that permeates all three patents and then address them in the same order to the extent that we can as the appellants did. And then one issue that transcends all the patents is the issue of whether the standard compliance exception to the foundational rule of how to prove patent infringement would apply. But if we affirm on other issues, is that moot? It is moot if you affirm on other issues. It's only relevant if this case were to go back and there should be no waiver in that instance, irrespective of the record below, both because this is an issue of law on whether you can prove infringement in another way and because if you were not to affirm, this issue is going to come up again and the court and the parties would need guidance on it. And then I'll just defer to the briefing on that issue. With respect- In other words, you want an advisory opinion? No, Your Honor. What we're really saying is that once this issue is open, there are all sorts of issues that come up and the court should stop it now. Dynacor was dicta. There's a foundational rule, let everyone prove infringement the same way. Now, on the 952 patent, we look at it from a product basis. That's where most of the products are. There's the largest set, the defragmentation products. Those are the ones where- Okay, suppose we don't pay attention to defragmentation products, but what about the fragmentation ones? I'd rather take you to your hardest one than your easiest. So why don't we start with the fact that customer service records exist for, at a minimum, four products. At a minimum, four. Maybe more. They argue 22. The district court seemed to allude to the fact that it was four. So if those customer service records exist, and those are evidence of fact of direct infringement because you have customer service representatives assisting people in enabling their fragmentation software- Okay, if we assume that's true and we're excluding all the other products- We're assuming that's true. Just dealing with those four. Just those. What about those four? And why should some of the judgment oaths not include them? They have two theories with respect to those four. One would be contributory infringement. The other would be induced infringement. Contributory infringement, that's where the substantial non-infringing use issue comes up. It's their burden on summary judgment to prove there's no- Yeah, but our Roche case said that for substantial non-infringing uses, you're supposed to look at the portion of the larger product that's really at issue. So that would be the fragmentation software components, which means there are no other non-infringing uses for that component, assuming I were to follow our precedent. I think that the issue is when we look at the facts of this case is, and Vitamix I think is particularly instructive on this, because some of the components there, the cap is found to be not directly related to the stir stick, which is the equivalent of the software here. In Vitamix, the court said the components that are directly related, which in that case was a ball and socket joint that fit with a stir stick, and an O-ring, and the ribbing, were integrally related. And in this case, the fragmentation threshold itself is not only part of the software, it has to be used by the software. But it's not like an on and off switch, which could be viewed potentially as separate. But it's so integral, it's just like those other parts in Vitamix. The fragmentation threshold can be set at almost 2,000 different values. No value guarantees fragmentation. It all depends on how the system's actually working. So we think when we look at what the component is, and we look at the admissions of the expert, Mr. Williams, as to what the component is and what he looked at, he looked at a component that included that fragmentation threshold. I'm just not following your argument. I'm assuming you're getting to it, or maybe you already said it. That was the argument. OK, so you better reframe it, because I really didn't get it. OK. If the threshold's set at 2,000. Is this your argument for why you think this is not a material part, or there are non-infringing substitutes? What exactly is the heart of the legal part of the test that you're saying is not met? The heart of the legal argument is that this component, not the product as a whole, but this component, has substantial non-infringing uses, because they concede, at least most of the time, it's not used to infringe. Their contention is... Well, it's not enabled. It's not enabled, and therefore it's not infringed. It's not enabled because of the fragmentation threshold. It's not an on-off switch. It's an integral part of the component. You can't separate them. There's nothing separate to sell, which is one of the standards that the court has used. So that's the argument, that as a matter of fact, most of the time, the product component is used in a non-infringing manner. Therefore, for purposes of contributory infringement, there is no infringement, because that's the end of the story. If there is... See, that doesn't make sense. I buy an alarm clock, OK? Alarm clock tells time, and the alarm goes off. The key portion of my now, my claim, is the alarm portion. That's what I've really contributed. Before, there were clocks, but no one had the buzzer. Well, people only set the buzzer in the morning once a day. It goes off for about 15 seconds. That doesn't suddenly make the buzzer on the alarm clock a non-infringing or non-substantial use, because it only goes off once a day. Because the other 23.9 hours out of the day, it's not buzzing. That's the part I'm having trouble with. In my analogy, it would be like an on-off switch. You turn it on, or you don't turn on that buzzer. And that's not what this case is. Because this fragmentation threshold, whatever it is, doesn't guarantee you're ever going to fragment. Does that sound like a question of fact for the jury? No, because the facts really aren't in dispute about how it works. So it's not to the jury, the judge found on these facts. Well, the facts aren't in dispute about how it works, but it's certainly a question of whether or not its use under the terms of it amount to a non-infringing substitute or not, like the Vitamix analysis. Well, I think in Vitamix, though, the court affirmed, as I recall, the court affirmed summary judgment, finding there was substantial non-infringing use, because those components acted together. And the court found that was sufficient for a summary judgment. To get back to your question on notice and intent, with a 952, the question, of course, isn't 287. The question is whether there is intent to infringe under the Arrow test for contributory infringement or specific intent under DSU. And I think the point of the court's opinion was that in the context of this patent pool, where there was no allegation of infringement, and they were saying just, we have patents that are essential, that without further specification, that's not enough to put Netgear in a position where it had intent to infringe or knowledge of infringement. Let me pass on to the 993, if I may. The fundamental issue is whether setting the priority of a terminal includes the message preference system. And it's a fairly straightforward issue that this is not setting the priority of a terminal. That's what the court found. We assert there's an additional ground, which was that under her claim construction of setting, it was invariable. And therefore, under both grounds, we ought to prevail. Then in addition, there's a separate limitation with respect to congestion, and that all that that evidence shows is a decrease in throughput. It doesn't throw dynamic control of congestion. The court held the priority level had to be set, and I don't know why she said this, but permanently. Not invariable. I think that's in contrast to the other claim, Claim 1, which used calculating a dynamic priority, and she specifically found that this language was different. And therefore, under claim differentiation, it was more appropriate to say that. But as I say, that's an alternative argument, and she went to the other issue in her opinion, saying that even assuming it could change, it may change, but they just have this message probability and preference system. There's no step where the terminal ever actually adopts any priority over any other terminal. The terminals are simply irrelevant. What about 642, synchronously? At 642, I want to point out something on figure 18 that actually wasn't in our brief, if I may. Steps D1 and D2, when you look at step 1, you notice it's in a rectangular box, and it says... I'm sorry, which figure are you at? Figure 18. Figure 18 of the 642. Correct. It says power on beacon receiving timing, and we're saying that's what the court found was correct. That's what's synchronous. That's in the one box. There's a power on at the same time as the beacon received timing. She interprets, the court interprets, synchronously to mean simultaneously, didn't she? That was the dictionary definition presented to her by the appellants, and the answer is yes. That's what she said, and that's something I don't understand. Maybe you could help me on this. You can't get the signal coming in until the receiving terminal is fully powered up. Is that right? That's right. She said... That is my question. My question is, if the two of them are going to come on simultaneously at the same instant, I don't see how the signal can be absorbed because this isn't fully charged up. What the court said is, there's going to be a ramp up time during the shifting process until it's fully powered on, and that the claim construction was at the same time. I think this case is very much like the Paragon case, where the court said real time means something other than instantaneous, which I think gets to your question. Nothing happens instantaneously, and real time is real time and just like simultaneous or at the same time, it's within the limits of the system. So your argument would be, it could occur immediately before, but it would have to be sort of really immediately before. I'm saying the plaintiffs failed to present any evidence whatsoever on what that meant. The claim construction at the same time is the correct claim construction. What's that mean to a person of ordinary skill in the art looking at their products? And there was no evidence whatsoever on what that would mean, what immediately before would mean. So maybe within the limits of the system, it takes some short period of time, a millisecond. There's simply no evidence, and it was their burden to present that evidence in the infringement argument. But you still haven't explained to me how it works. For example, suppose the rule was, suppose two things had to happen. A railway gate had to be down all the way closed before the train crossed over the gate. Well, if the two things happened simultaneously, by definition, the train couldn't not get there before the gate was all the way down. And I don't understand this. I know we're talking about infinitesimal amounts of time, which is quite beyond my comprehension. But I gather that you say it has to be fully charged before the signal comes in, and yet the charging and the signal are going to be done simultaneously. How can the signal get in if the signal gets there before the, or at the same time that the terminal is fully charged? I don't understand that. What we're saying is that if it's at the same time, that's the correct construction. And the construction having some temporal relationship or the new construction presented here for the first time being in phase, that's not correct. So let me deal with that point by saying at the same time means as close as possible to literally at the very same instant, whether it's the railway or the computer. Now how close does that have to be? It's effectively at the same time. So you're saying at the same time doesn't mean what it literally seems to be. I'm saying this is like the Paragon case. Efficiently at the same time so that the system works. Well, so that the system works and it's as close to the same instant as possible. Why wouldn't the chart that they provided, which is in the blue brief on page 41, it's at other places in the appendices too, but why wouldn't that chart, which in fact shows the power up at the exact time the signal goes on three separate occasions, why wouldn't that be sufficient as a factual piece of evidence to preclude summary judgment on synchronization even under the district court's exact construction? I think there's two reasons. First, that evidence is actually evidence of tests conducted five days apart. If I can use an analogy. But it doesn't matter. You could bring all that up on cross-examination. That's a fact question to the jury. What you're saying is, look, these tests are done five days apart and they pieced them together. Well, that's your argument about whether or not this test actually shows what it shows. But nonetheless, that's all a matter of fact to the jury. I'm saying because they're done at different times, they can't, literally can't show what they purported to show. The reason is, all they could possibly show is that events occur... Both at 306 milliseconds. Right. That's the best they could show. So it's both occurring at exactly 306 milliseconds. But they could be off phase. There's no evidence that they're on phase because they didn't test the access point sending every 306 and that signal being received. But you could argue, well, they could be off phase, but you didn't establish that they were. And they presented this and said, this is the representation of the chart. So why wouldn't that be a question of fact to be ferreted out? The district court didn't hold, this chart is not evidence because these things are off phase. Or because there's no proof that they're on phase. The court did not reach that issue. There were no findings made about that. We have this chart, and if this chart is to be believed, they're happening at exactly the same moment. What the court found was, it wasn't exactly the same moment. That there was this range, which she couldn't determine. 302, 306, 312 milliseconds. That that range was critically important in a patent that required events to occur at the same time. And there was no evidence beyond experts saying, that's approximately the same. And that's insufficient to get to a jury. Because without the expert testimony that's specific on why, in a power saving patent, something approximately that amount of time is sufficient, the jury would be left without sufficient evidence to make a credible determination. That that's their burden, and that's what the court found. They failed to satisfy that burden by providing the expert testimony that's needed. Now, expert testimony might not be needed in a simple mechanical case. But this court's found in more complicated cases, where things are outside the provenance of a jury, a jury's own common sense or knowledge, that such expert testimony is required. And that's why, at that point in her opinion, You want to address the DRR period? We have a little bit of time left. Sure. On the DRR period, I think the court got it right. She said that, in effect, the plaintiffs have not demonstrated an end to the period. They should show the beginning, but they didn't show the end of the period. And that's in the mobile stations. And that's why they failed, as a matter of evidence, to show that there was a DRRP in any device. And it's really that, you know, that's the reasoning. Well, their argument, as I understood it, is that the district court imported the time extension information limitation and somehow made it part of what was required to prove the DRR period. And that would be improper. The, yeah, the court was simply looking at the evidence under her construction and found that all that they showed was that the access points just keep sending the information. And there's no fixed period of time. And so, since they failed to show that there was the fixed period of time, that was their burden, and they didn't carry it. Nothing more, Mr. Miller? Nothing more, unless your Honor said further questions. We've covered three patents. Appellants have a little rebuttal time. Mr. Miller has three minutes and Ms. Maynard two. I'd like to turn to a couple of issues. First, on the threshold tool that sets the fragmentation threshold, that is very much an on-off switch. It sets a number which is tested against to see if the firmware that performs fragmentation will fragment or not. I have my alarm clock which tests against the time running and says, is it 7.02 yet? Yes. 7.02? Now, Netgear knew that all of the accused products, the products that are accused of fragmenting, could perform fragmentation if the threshold was set properly. In particular, for the four products where Judge Crabb found that there were customer service records that demonstrated that Netgear had instructed customers to turn on fragmentation, Netgear knew that their products were performing fragmentation. Therefore, they knew that those products were specially designed to infringe. Netgear also, as I mentioned earlier, instructed their ODMs to manufacture products that comply with the standard, meaning that if they fragment, they fragment in accordance with Section 9.4 of the standard. Section 9.4 of the standard is laid out. It's a main heading. It's less than a page, but it does provide the specific requirements for how fragmenting is done. One other point on notice. The damages statute requires an allegation of infringement. I do not believe that you need to provide an allegation of infringement to provide a company with knowledge of a patent sufficient so that they can be accused of indirect infringement. On the claim construction for the 993 patent and comparing Claim 1, which calls for set a dynamic priority group number. The word dynamic appears, but it's a modifier to a priority group number. It does not say a dynamic priority level. I submit that that should not control in any way the construction of setting a priority level in Claim 25, which does not limit the time or the number of times that the priority level can be set. Thank you. Thank you, Mr. Miller. Ms. Maynard. Thank you, Your Honor. I'd like to make a brief point about synchronously, and then I'd like to try one more time to answer Judge Moore's question about data received ready period. With synchronously, the definition or construction that we're proposing in this court is our Markman construction can be found at A383. There we propose shifting to a power on state so as to receive a beacon signal. That we still believe that's the correct construction, although we do think that under any construction there is a disputed fact for trial here. Judge Moore, if I could try one more time to address your concerns about data received ready. The claim does say that the access point will set time extension information if data is to be transmitted beyond the data received ready period. But nothing about it stopping if it doesn't set time extension information. And that's what the judge below seemed to require us to do. We can show, if we are allowed a chance, and this is another point about our data received ready period claim, it's Seventh Circuit law, as this court has recognized in Glaverville, that Netgear never moved for summary judgment in making this argument. He's not advancing that argument really even here today. And when a party has not had a chance to make a response, reversal and a remand for an attempt to allow us to show that is appropriate. We can show a fixed period and we can show... Counsel, I see the argument. This is why I was sensitive to your arguments, the panel was, and so I requested some additional information. And when you look on page 81 of the brief in opposition to summary judgment of infringement by Netgear, fourth, plaintiffs do not show the longer awake period shown on the oscilloscope graph as a result of time extension information. This trace does not show why it stayed awake beyond the beacon signal. There's a ton of time extension argument in this brief. You guys had two summary judgment motions. You were asking for summary judgment of infringement, they were asking for summary judgment of non-infringement, and the issues seemed to be squarely presented and at least tallied up for the judge. Is this somehow different? Is that their opposition to our summary judgment motion? Yes, correct. Well, I think that would be different than their making a motion for summary judgment on any given ground, Your Honor, and that the law is clear in the Seventh Circuit that if a party does not make a motion on a particular ground... No, no, the Seventh Circuit law, as I understand it, is you need to have an opportunity to be heard on the ground before the judge can find against you on that ground, and you had competing summary judgment motions that were simultaneously before the judge and heard together. It's all part of the same big package. Why isn't that sufficient to meet the notice requirement under Seventh Circuit law? Well, as I read the... We've cited several different strands of Seventh Circuit law in our briefing, some of which is the notice, but as I read the Edwards case and the Malhotra case, which are cited in our reply brief, those cases hold that if party moves for summary judgment on ground A but not ground B, then it's erroneous for the court to grant on ground B, and that's really what we're relying on here, and I do think that is what happened. I don't think we had an opportunity to defend against... It's one thing to deny our affirmative motion for summary judgment, but it's another thing to deprive us of the chance to go to trial on their motion for summary judgment, and that's what we're asking here, Your Honor. Thank you. If the court has no further questions. Thank you, counsel. The case has been well argued.